UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Crim. 5:23-cr-00142-GFVT-MAS |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| DONQUEL RAHMEL HALL ) | **&** |
| ) | **ORDER** |
| Defendant. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Magistrate Judge Stinnett's Recommended Disposition of a motion to suppress filed by Defendant Donquel Hall. [R. 54; R. 45.] The motion asks the Court to suppress evidence derived from a traffic stop involving Mr. Hall, the subsequent questioning of Mr. Hall, and the execution of a residential search warrant. [R. 45.] For the reasons that follow, Judge Stinnett's recommendation will be **ADOPTED** and Mr. Hall's Motion to Suppress will be **GRANTED in part** and **DENIED in part**.

**I**

The United States charges Mr. Hall with multiple counts related to a conspiracy to distribute fentanyl and oxycodone. [R. 1.] On October 11, 2022, Kentucky State Police Trooper Jack Gabriel initiated a traffic stop of a Jeep with one driver and three passengers. [R. 54 at 2.] Defendant Hall was a passenger in the back seat of the Jeep. *Id*. Trooper Gabriel approached the Jeep, asked for the driver's identification, and informed the driver that the window tinting on the Jeep was too dark. *Id*. Trooper Gabriel then had the driver roll down the Jeep's windows, and

he asked for identification from the three passengers. *Id*. After taking licenses from each of the Jeep's occupants, Trooper Gabriel returned to his cruiser. *Id*.

      Three minutes later, Trooper Gabriel reapproached the Jeep and, smelling marijuana, had the driver step out of the vehicle. *Id*. After frisking the driver and directing him to sit on the sidewalk, Trooper Gabriel turned his attention to Mr. Hall. *Id*. Trooper Gabriel asked Mr. Hall to step out of the Jeep and asked him, "are you the one from Kentucky?" *Id*. Upon Mr. Hall's answer in the affirmative, Trooper Gabriel began a pat-down search before pausing to handcuff Mr. Hall and asking for his last name. *Id*. Mr. Hall answered, and then Trooper Gabriel continued his pat-down search. *Id*. During the pat-down, Trooper Gabriel discovered and removed a pill bottle from Mr. Hall's front sweatshirt pocket. *Id*. Following his search, Trooper Gabriel directed Mr. Hall to sit down on the sidewalk. *Id*. Trooper Gabriel and another officer removed the Jeep's other two passengers and frisked them too before having them sit on the sidewalk. *Id*.

      Trooper Gabriel then turned his attention to the Jeep. *Id*. While searching the Jeep, he found several cell phones and attempted to identify to whom each cell phone belonged by asking the passengers "whose is whose?". *Id*. at 3, 18. After Mr. Hall indicated that three of the cellphones were his, Trooper Gabriel, still trying to determine each cellphone's ownership, held up each phone and asked Mr. Hall "this one?". *Id*. at 3, 18. Trooper Gabriel also searched the Jeep's trunk and found a black backpack containing cash. *Id*. at 3. He asked Mr. Hall who owned the bag and how much money was inside, to which Mr. Hall responded, "not sure." *Id*. at 3; 19. Trooper Gabriel then asked Mr. Hall whether Mr. Hall was a convicted felon, and Mr. Hall answered "no." *Id*.

2

At 11:25 a.m., just nine minutes after Trooper Gabriel effectuated the initial stop of the Jeep, he asks "what kind of pills are those?" [R. 45-1 at 9.] But before Mr. Hall or anyone else answers, Trooper Gabriel stops himself and issues the four occupants their *Miranda* rights. *Id*. After *Mirandizing* the group, Trooper Gabriel reasserts his question about the identity of the pills and continues questioning Mr. Hall. *Id*. [R. 54 at 3.]

On this same day, October 11, 2022, law enforcement executed a search warrant at the residential address 3117 Starling Drive in Lexington. [*See* R. 45-2.] The search warrant described the property to be seized as controlled substances, and documents and electronic devices related thereto. *Id*. at 1. Following these events, the Grand Jury returned an indictment against Mr. Hall, charging him with multiple criminal counts related to the distribution of controlled substances and possession of a firearm in furtherance of those crimes. [*See* R. 1.] Pursuant to an arrest warrant, Mr. Hall was arrested on February 12, 2024, and pled not guilty to all counts. [R. 12; R. 26.]

In anticipation of trial, Mr. Hall moved to suppress all evidence derived from the October 11, 2022, traffic stop and search at 3117 Starling Drive. [R. 45.] Judge Stinnett prepared a Report and Recommendation as to the motion, and Mr. Hall filed timely objections. [R. 54; R. 59.] The matter is now ripe for review.

**II**

Judge Stinnett recommends that only Mr. Hall's response to Trooper Gabriel's inquiry regarding Mr. Hall's felon status be suppressed. [R. 54 at 27.] Judge Stinnett recommends that the other fruits of the traffic stop and residential search not be suppressed because neither search or seizure violated the Fourth and Fifth Amendment. *Id*. To receive review of a Magistrate Judge's recommendation, parties must timely file specific objections to it. *United States v.*

3

*Walters*, 638 F.2d 947, 950 (6th Cir. 1981). A district court must make a de novo determination "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Only specific objections, rather than generalized complaints, receive review. *See Slater v. Potter*, 28 F. App'x 512, 513 (6th Cir. 2002). When no objections are made, however, this Court is not required to "review . . . a magistrate's factual or legal conclusions, under a de novo or any other standard . . . ." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). The Court analyzes first Mr. Hall's objections related to the traffic stop.

### A

### i

Mr. Hall first objects to Judge Stinnett's determination that Trooper Gabriel's stop of the vehicle for alleged excessive window tint was lawful. [R. 59 at 3.] Mr. Hall avers that the stop was pre-textual and had nothing to do with a motor vehicle violation. *Id*. He insists that the stop occurred for "the sole objective of a custodial interrogation and arrest of Hall related to an ongoing law enforcement investigation in Fayette County." *Id*.

A police officer may initiate a traffic stop if the officer "possess[es] either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012). This is true even if the stop were a pretext to search the vehicle for another reason because an officer's actual motivation for making the stop is irrelevant to the constitutionality of the stop. *Whren v. United States*, 517 U.S. 806, 813 (1996). "Whether a traffic stop violates the Fourth Amendment must be evaluated . . . by undertaking 'an objective assessment of an officer's actions in light of the facts and circumstances then known to him.'" *Id*. (quoting *Scott v. United States*, 436 U.S. 128, 137 (1978)). "If the facts known to the officer at the time of the stop were sufficient to constitute probable cause to believe that a traffic

4

violation had occurred, a reviewing court may not look at the officer's ordinary routine, or his conduct or conversations that occurred before or after the stop to invalidate the stop as pretextual." *United States v. Johnson*, 242 F.3d 707, 709 (6th Cir. 2001) (citation omitted). An officer is justified in effectuating a traffic stop where he has a reasonable suspicion that a vehicle violates window tinting laws. *See Weaver v. Shadoan*, 340 F.3d 398, 407-08 (6th Cir. 2003); *United States v. Shelton*, 817 Fed. App'x 217, 219 (6th Cir. 2020).

Kentucky law provides that vehicles are only allowed to be tinted on the upper portion of the windshield, or above the AS/1 line. Ky. Rev. Stat. Ann. § 189.110(2)(b). Kentucky law also limits tints for front and rear side windows. Ky. Rev. Stat. Ann. § 189.110(3). Judge Stinnett's recommendation cites Trooper Gabriel's testimony, which suggests that Trooper Garbriel pulled over the Jeep in which Mr. Hall was an occupant because Trooper Gabriel suspected that the windows were tinted in violation of Kentucky law. Apparently, Trooper Gabriel personally observed the darkened upper portion of the Jeep's windshield and knew from his experience as law enforcement that the dark strip of tint was excessively below the AS/1 line that is found on all vehicle windshields. Because Trooper Gabriel was able to articulate a lawful basis for the stop, it was not unlawful.

### ii

It also appears that Mr. Hall objects to Judge Stinnett's determination that Trooper Gabriel's pat down and handcuffing of Mr. Hall were based on a reasonable articulable suspicion. To frisk a person for weapons, an officer must reasonably believe the person is armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Reasonable suspicion exists where, based on the totality of the circumstances, a reasonably prudent person would believe that his safety or that of others was in danger. *United States v. Noble*, 762 F.3d 509, 521-22 (6th Cir. 2014).

Reasonable suspicion requires more than a mere hunch; it demands "a particularized and objective basis for suspecting [that] the particular person" is armed and dangerous. *Id*. at 522 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981).

"[A] person's mere presence in a car, which the police believe is connected to drug trafficking, is not an automatic green light for frisking that person." *Id*. at 523. But a police officer can "rely on his [or her] training and experience that drug dealers frequently carry weapons . . . ." *Id*. at 524. (quoting *United States v. Branch*, 537 F.3d 582, 589 (6th Cir. 2008)). Some corroboration that particular individuals are involved in dealing drugs is required before allowing a frisk for weapons. *Id*. An officer can have a reasonable belief that a person may be armed because of a suspicion that the person is involved in illegal drug activity. *United States v. Noble*, 364 Fed. App'x 961, 965 (6th Cir).

Here, there are specific facts to support a finding that Trooper Gabriel possessed the requisite reasonable suspicion to pat down Mr. Hall. Trooper Gabriel testified that, based on his own experience and training, there are often firearms associated with drug trafficking activity. His suspicion that Mr. Hall in particular was involved in drug trafficking was supported by two facts. First, the odor of marijuana emanating from the vehicle. *See Noble*, 364 Fed. App'x at 965 ("officers had a reasonable belief that [the defendant] may be armed because of their suspicion that he was involved in illegal drug activity, which was supported by the odor of marijuana emanating from [the defendant's] vehicle … along with the officers' experience that persons engaged in drug activity are often armed."). Second, Trooper Gabriel was aware that Mr. Hall was the subject of the October 11 residential search warrant based on Mr. Hall's involvement in alleged drug trafficking activity. Thus, the pat-down of Mr. Hall was permissible.

6

Moreover, the use of handcuffs does not exceed the bounds of a *Terry* stop, so long as the circumstances warrant that precaution. *Houston v. Doe*, 174 F.3d 809, 815 (6th Cir. 1999). The Sixth Circuit has found that during *Terry* stops concerning narcotics transactions, officers are entitled—without probable cause—to remove suspects from a vehicle immediately and place them in handcuffs as a precaution." *United States v. Slaughter*, 751 Fed. Appx. 659, 662-63 (6th Cir. 2018). Here, as previously explained, there are sufficient facts supporting Trooper Gabriel's reasonable belief that Mr. Hall was involved in illegal narcotic activity. Hence, the circumstances warranted his use of handcuffs on Mr. Hall concurrent to the pat-down search and vehicular investigation.

### iii

Mr. Hall also contends that Judge Stinnett's recommendation "incorrect [sic] finds that a *de minimis* portion of law enforcement's custodial interrogation of Hall requires suppression in violation of Miranda." [R. 59 at 7.] Mr. Hall specifically objects to Judge Stinnett's analysis "reconciling the non-*Mirandized* custodial interrogation as pertaining only to the routine gathering of biographical data for booking purposes should not constitute interrogation under *Miranda*." Mr. Hall maintains that Trooper Gabriel's questions at the beginning of the men's interaction were not simply of a routine administrative nature, but rather a more substantive nature constituting a custodial interrogation. Thus, Mr. Hall argues, without *Miranda* the entire questioning of Mr. Hall by law enforcement was unlawful, and any answers that Mr. Hall gave prior to being *Mirandized* should be suppressed.[1]

---

[1] Mr. Hall agrees with Judge Stinnett's determination that Mr. Hall was in custody for Fifth Amendment purposes after being handcuffed and placed on the sidewalk. Mr. Hall's rub is specifically with Judge Stinnett's analysis of whether and when an interrogation began.

7

Miranda only governs "interrogations." *Rhode Island v. Innis*, 446 U.S. 291, 297-98 (1980). An "interrogation" comprises "not only [] express questioning, but also any words or actions on the part of the police that the police know are reasonably likely to elicit an incriminating response from the suspect." *United States v. Pacheco-Lopez*, 531 F.3d 420, 423 (quoting *Innis*, 446 U.S. at 301). Police questioning is not an "interrogation" when an officer asks about information "he was already entitled to know" through a search incident to arrest. *United States v. Lester*, 98 F.4th 768, 773 (6th Cir. 2024) (quoting *United States v. Woods*, 711 F.3d 737, 740-42 (6th Cir. 2013)). Thus, "questions 'reasonably related to the police's administrative concerns,' such as the defendant's name, address, height, weight, eye color, date of birth and current address" do not require *Miranda*. *Pacheco-Lopez*, 531 F.3d at 423 (quoting *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990)). But "[t]his 'booking exception' to *Miranda* requires the reviewing court to carefully scrutinize the facts, as '[e]ven a relatively innocuous series of questions may, in light of the factual circumstance and the susceptibility of a particular suspect, be reasonably likely to elicit an incriminating response.'" *Id*. at 423-24 (quoting *United States v. Avery*, 717 F.2d 1020, 1025 (6th Cir. 1983)).

Officers may also ask "questions necessary to secure their own safety or the safety of the public" without administering *Miranda*. *United States v. Williams*, 272 Fed. App'x 473, 477 (6th Cir. 2008) (citing *New York v. Quarles*, 467 U.S. 649, 659 (1984)). The public safety exception applies "when officers have a reasonable belief based upon articulable facts that they are in danger." *Id*. (quoting *United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007)). In other words, the officer must reasonably believe that the defendant might have or recently have had a weapon and that someone other than the police might gain access to the weapon and inflict harm with it. *Id*.

8

Trooper Gabriel's questions aimed at determining Mr. Hall's identity certainly fall within the realm of administrative questions that do not require *Miranda*. In this scenario, asking Mr. Hall what his last name was and whether he was "the one from Kentucky" (after examining each passenger's identification) are not the types of questions reasonably likely to elicit an incriminating response. Although Trooper Gabriel was aware that Mr. Hall was the subject of a search warrant, these innocuous questions went only towards confirming Mr. Hall's identity within a group of four individuals. Trooper Gabriel's questions related to the pat-down and whether Mr. Hall had any weapons on his person also do not require *Miranda*. As thoroughly explained above, Trooper Gabriel had a reasonable belief that Mr. Hall might be armed and dangerous given Mr. Hall's known involvement in drug trafficking.

Trooper Gabriel's remaining questions fall outside the routine booking and public safety exceptions. Judge Stinnett concluded that the pre-*Miranda* question inquiring about Mr. Hall's felon status was an inappropriate question because Mr. Hall was in custody. But Mr. Hall contends that Trooper Gabriel's questions related to the ownership of several cell phones in the backseat of the Jeep and the ownership of a backpack containing currency should also be suppressed. The Court agrees with Judge Stinnett, however, that under the totality of the circumstances, these questions were not designed to elicit an incriminating response from Mr. Hall. As Judge Stinnett observed, cell phone ownership is not a core element of the crimes for which Mr. Hall was suspected of or has been charged with committing. Thus, attempting to ascertain which of the four individuals owned each cell phone does not constitute an interrogatory question requiring *Miranda*.

In respect to the backpack, Trooper Gabriel merely asked who the backpack belonged to and how much money was in it before proceeding to take a picture of the backpack for inventory

9

purposes. Had Trooper Gabriel asked whether the backpack contained any illegal substances, or where the money in the backpack came from, then the Court would take pause. But he did not. Rather, like the questions relating to cellphone ownership, Trooper Gabriel's questions were strictly related to creating an inventory of items while the Jeep was being searched. Accordingly, *Miranda* was not yet required.

       Mr. Hall also contends that the post-*Miranda* statements should be suppressed because the warning was given mid-interrogation. The Court has explained, however, that none of Trooper Gabriel's pre-*Miranda* questions (aside from the one pertaining to Mr. Hall's felon status) required *Miranda*. And Trooper Gabriel's singular error does not automatically warrant suppression of the post-*Miranda* statements. "[A] series of relevant facts bear on whether *Miranda* warnings delivered midstream could be effective enough to accomplish their object: the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Missouri v. Seibert*, 542 U.S. 600, 615 (2004). "[P]ost-warning statements remain admissible if the *Miranda* warnings nevertheless functioned effectively—if the warnings informed the suspect that he had a genuine choice to continue speaking." *United States v. Woolridge*, 64 F.4th 757, 760 (6th Cir. 2023). The fact pattern that Courts are concerned with is "when the police withhold warnings until a suspect confesses, administer *Miranda*, then pressure the suspect to repeat the confession." *Id*.

       This case does not present any coercive qualities that undermine *Miranda*. In *Seibert*, officers subjected the defendant to "systematic, exhaustive" questioning. *Seibert*, 542 U.S. at 616. The defendant confessed a half hour later, only after which did the officers administer

10

*Miranda* warnings.  *Id*. at 605.  They pressed the defendant to confess again by recounting her earlier confession.  *Id*. at 616-17.  This strategy would undermine *Miranda*.

In this case, however, Trooper Gabriel did not employ systematic, exhaustive, or coordinated questioning. And he never exploited Mr. Hall's unwarned statement regarding his felon status.  Moreover, Trooper Gabriel's *Miranda* warning effectively conveyed to Mr. Hall that Mr. Hall had the right to stop talking.  This fact can be ascertained given Mr. Hall's indication that he understood Trooper Gabriel's *Miranda* warning.  Because *Miranda*'s purpose was not undermined in this scenario, Mr. Hall's post-*Miranda* statements will not be suppressed.

**B**

Mr. Hall's last objection requests that the Court reject Judge Stinnett's recommendation to deny Mr. Hall's motion to suppress the fruits of the residential search warrant effectuated at 3117 Starling Drive. [R. 59 at 13.]  Mr. Hall does not direct the Court with any specificity to which part of Judge Stinnett's recommendation is disagreeable.  Rather, he makes a blanket statement that "[i]t was error for the Magistrate's Report to deny Hall relief under the Exclusionary Rule and to apply the Leon Good Faith Exception …." *Id*. at 14.

Conclusory or generalized objections fail to trigger more exacting review.  The Sixth Circuit has previously explained that one of the fundamental purposes of the Magistrate's Act is to aid in the efficient administration of justice.  *Howard v. Sec. of Health and Hum. Serv.*, 932 F.2d 505, 509 (6th Cir. 1991) (citing *Walters*, 638 F.2d 949).  Judicial economy is supported by requiring litigants' objections to focus the Court's attention to specific issues.  *See id*. Otherwise, "any issue before the magistrate judge would be a proper subject for appellate review, and this would be an inefficient use of judicial resources."  *Id*. (citation omitted) (cleaned up). Thus, "a general objection to a magistrate's report, which fails to specify the issues of

11

contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard*, 932 F.2d at 508-09).

The Court finds that Mr. Hall's objection is the type of generalized objection that fails to prompt more exacting scrutiny. Mr. Hall fails to point out precisely which points are contentious. Rather, he merely repeats the same arguments he previously put before Judge Stinnett, attempting to frame them as an objection. [*Compare* R. 45-1 at 12-14 and R. 59 at 13-14.] This action is not a meaningful challenge to Judge Stinnett's recommendation. Simply objecting to the Magistrate Judge's recommendation because he reached a disagreeable disposition does not require the Court to review the issue *de novo*. A defendant's conclusory objections are tantamount to a complete failure to object. *See Slater*, 28 Fed. App'x at 513 (Plaintiff's "conclusory objection is insufficient to preserve her challenge to the district court's dismissal."). Again, utilizing the magistrate judge for such issues is meant to promote judicial economy. If the Court were to entertain Mr. Hall's objection, it would essentially result in relitigating the entirety of the referred issue, thereby making the initial reference to the magistrate judge useless. Thus, "[t]he functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." *Howard*, 932 F.2d at 509. Hence, finding no clear error in Judge Stinnett's well-articulated recommendation regarding the search warrant, there is no reason to disturb it Judge Stinnett's recommendation.

### III

Upon review, the Court finds Judge Stinnett's Report and Recommendation to be sound and thorough. Having reviewed the record *de novo* where warranted, the Court comes to the same conclusions as Judge Stinnett. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Donquel Hall's Objections **[R. 59]** are **OVERRULED**,

2. Judge Stinnett's Report and Recommendation **[R. 54]** is **ADOPTED** as and for the opinion of the Court;

3. Mr. Hall's Motion to Suppress **[R. 45]** is **GRANTED in part** and **DENIED in part**; and

4. Trooper Gabriel's pre-*Miranda* question about Mr. Hall's felony status and Mr. Hall's response to that question **SHALL** be excluded from evidence at Mr. Hall's trial

This the 8th day of August 2024.

Gregory F. Van Tatenhove
United States District Judge